UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) - DEFENDANT'S MOTIONS IN LIMINE (Filed July 17, 2017, dkts. 247-253) |
|---|---|
| | PLAINTIFFS' MOTION IN LIMINE (Filed July 17, 2017, dkt. 255) |

## I.    INTRODUCTION

On June 19, 2015, plaintiffs DCD Partners, LLC ("DCD"), Personal Investment Center, LLC ("PIC LLC"), and Reverend Dr. J. Benjamin Hardwick ("Hardwick"), as a trustee of the Personal Involvement Center Trust No. 1 ("PIC Trust") filed the operative Second Amended Complaint in this suit against defendant Transamerica Life Insurance Company ("Transamerica"). Dkt. 40 ("SAC"). The SAC asserts the following claims against Transamerica: (1) breach of contract, in violation of California law; (2) breach of the covenant of good faith and fair dealing; (3) tortious breach of the duty of good faith and fair dealing; (4) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (5) declaratory judgment; and (6) negligent misrepresentation. Id.

On August 9, 2017, the Court granted summary judgment in Transamerica's favor regarding the claims brought by Hardwick and PIC LLC. The Court further granted summary judgment in favor of Transamerica with respect to DCD's claim for tortious breach of the covenant of good faith and fair dealing and DCD's claim for negligent misrepresentation. The only claims that remain for trial by a jury are DCD's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. DCD's claims for violation of the UCL and for declaratory judgment will be decided by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

the Court after the jury reaches a verdict and after any additional evidence has been presented to the Court.

On July 17, 2017, Transamerica filed seven motions in limine. Dkts. 247-253 ("Def. Motion" one through seven). On July 24, 2017, DCD filed an opposition to six of Transamerica's motions. Dkts. 276 ("Opp'n to No. 2"), 279 ("Opp'n to No. 3"), 282 ("Opp'n to No. 5"), 285 ("Opp'n to No. 6"), 286 ("Opp'n to No. 4"), 291 ("Opp'n to No. 1"). On July 26, 2017, DCD filed an opposition to Transamerica's seventh motion in limine. Dkt. 304 ("Opp'n to No. 7"). On August 12, 2017, Transamerica filed supplemental briefs in support of its first three motions in limine. Dkt. 332.

On July 17, 2017, DCD filed one motion in limine. Dkt. 255 ("DCD Motion"). On July 24, 2017, Transamerica filed an opposition to the DCD Motion. Dkt. 268 ("Def. Opp'n").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

DCD owns and pays premiums for over 2,000 life insurance policies issued by Transamerica in 2004 (the "Policies"). Although DCD owns the Policies and pays the premiums to keep the Policies in force, the insureds are predominantly African American and Hispanic people living in southern Los Angeles. The Policies were all issued as part of a charity-owned life insurance program administered by Transamerica. In the event that an insured person dies, the insured's family receives a portion of the death benefit. DCD also receives a portion of the death benefit as does a charitable organization, the Personal Involvement Center, run by Hardwick.

The Policies all have identical language. Pursuant to the Policies, owners are not charged a predetermined premium. Instead, the policy owner decides how much to pay in premiums each month. Premiums are deposited into an account for each policy. Each month, Transamerica subtracts an amount from each policy account and deposits a separate amount of interest. Interest accrues on the account's balance based upon minimum rates and average annual rates guaranteed by each policy. The net amount in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

each policy account is known as the Accumulation Value. The Policies remain in force, and their death benefit remains payable, so long as the Accumulation Value exceeds monthly withdrawals by Transamerica.

The amount of premium payments necessary to keep a policy in force depends, principally, upon the Accumulation Value and the monthly deduction. The monthly deduction is equal to (1) the Monthly Deduction Rate ("MDR") multiplied by the difference between the Accumulation Value and the death benefit then multiplied by .001, plus (2) a monthly deduction for any policy riders, plus (3) a set policy fee, plus (4) a monthly expense charge ("MEC"). The MEC on the Policies has never changed. In this action, DCD challenges an increase on the MDR affecting the Policies.

The Policies provide:

A **Monthly Deduction** is an amount we withdraw from the accumulation value of the policy (or of each layer, respectively) at the beginning of each policy month.

***

**Monthly Deduction Rates** -- We will determine the monthly deduction rate for each policy month at the beginning of that policy month. The monthly deduction rate for the base policy will depend on: the Insured's gender; the Insured's smoking status; the Insured's class of risk as of the Policy Date; the number of years that the policy has been in force; and the Insured's attained age.

A table of guaranteed maximum monthly deduction rates for the base policy is shown in the Policy Data. We may use rates lower than these guaranteed maximum monthly deduction rates. We will never use higher rates.

***

Any change in the monthly deduction rates will be prospective and will be subject to our expectations as to future cost factors. Such cost factors may

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

include, but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes.

*** 

**Who Can Make Changes in the Policy** -- Only our President or a Vice President together with our Secretary have the authority to make any changes in this policy.  Any change must be in writing.

Dkt. 152-3 ("Specimen Policy") at 14, 22, 23, 25.  The "Policy Data" section of the Policies provides a table of guaranteed MDRs for the first five policy years and guaranteed maximum MDRs for each year thereafter.  The "Policy Data" section also states, "CURRENT MONTHLY DEDUCTION RATES ARE NOT GUARANTEED AFTER POLICY YEAR 5, NOR ARE THEY ESTIMATES FOR THE FUTURE." Specimen Policy at 10.

Although the Policies issued in 2004, DCD did not become an owner until 2009. In 2009, DCD took over paying all of the Policies' premiums in exchange a large share of any death benefits paid.  In 2011, Michael Rosenfeld purchased DCD.  Before making the purchase, Rosenfeld engaged Scott Rose, an insurance consultant, to advise him regarding a potential investment in the Policies.  Rose conducted an analysis of the prospective Policies and determined that an investment in the Policies would be favorable for Rosenfeld, in part, because the insureds, particularly the African-Americans among the insureds, had a worse mortality experience than the population at large.  Before investing, Rosenfeld determined that death benefit payments would exceed insurance premium payments by between $110 million and $220 million over the life of the Policies.

In 2012, one of Transamerica's actuary employees, Danny Mahoney, began to examine the MDR applicable to the Policies.  The parties dispute many of the facts underlying Mahoney's work and the purpose of Mahoney's work; however, at the center of the parties' dispute is Mahoney's purported calculation of future mortality among the Policies.  To calculate future mortality, Mahoney counted the number of death benefits paid among DCD's Policies since they issued, saw that it was 12 in most (but not all) of the years since the Policies issued, and assumed that there would be 12 prospective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

claims in the next year. After Mahoney performed several calculations relating to the Policies, Transamerica decided to increase the MDR applicable to the Policies by 50 percent.

Transamerica implemented the MDR increase in 2013. In March 2013, Transamerica informed DCD that the minimum monthly premium payments to keep the Policies in force had increased from approximately $75k per month to $113k per month. In any given month, DCD pays only enough premiums to keep the Policies in force. DCD has since continued to pay the increased premiums, thereby keeping the Policies in force; however, DCD contends here that the MDR increase was not permitted by the language of the Policies or was in violation of the implied covenant of good faith and fair dealing.

## III. TRANSAMERICA'S MOTIONS IN LIMINE

### A. Transamerica's Motion to Exclude Expert Opinions Not Disclosed in Plaintiff's Initial Expert Reports

Federal Rule of Civil Procedure 26(a)(2)(B) requires that the parties disclose experts' names as well as "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Federal Rule of Civil Procedure 26(e) requires that a party supplement its Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete. . . . Any additions or changes to [an expert report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Pursuant to Federal Rule of Civil Procedure 37(c)(1):

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1).

Defendant's first motion in limine seeks to exclude any expert opinions that plaintiff's witnesses may offer at trial that defendant argues were not timely disclosed during discovery. During expert discovery, plaintiff served Transamerica with three expert reports: (1) a report by Vincent Granieri, dated October 7, 2016, dkt. 264-1 ("Granieri Report"); (2) a rebuttal report by Granieri, dated November 8, 2016, dkt. 264-2 ("Granieri Rebuttal"); and (3) a report by Robert Cauthen, dated October 7, 2016, dkt. 264-3 ("Cauthen Report"). On June 17, 2017, in support of plaintiff's opposition to Transamerica's motion for summary judgment, both experts submitted declarations. See dkt. 264-4, Declaration of Vincent Granieri ("Granieri Decl."), dkt. 264-5, Declaration of Robert Cauthen ("Cauthen Decl."). Transamerica contends that each expert's declaration contained "completely new opinions and analyses" that had not previously been disclosed to Transamerica. Def. Motion No. 1 at 3.

In its motion here, Transamerica takes issue with one opinion offered by Cauthen and four opinions offered by Granieri. Specifically, Cauthen stated that, based upon his experience in the insurance industry, he is "familiar with the insurance industry custom and usage of the term 'mortality' as a future cost factor . . . [which refers to] the forward-looking mortality assumption for an actuarially-defined class of universal life insurance policies." Cuathen Decl. ¶¶ 10, 13-14. Transamerica contends that the foregoing opinion was not disclosed in the Cauthen Report. In his declaration Granieri offered the following purportedly new opinions:

> (1) the "smallest actuarially supportable policy class," for purposes of increasing the cost of insurance, is "Simplified Issue written on Trans Value Group Carve-out ('TV GCO') policy form,"[1] Granieri Decl. ¶¶ 4-7;

---

[1] The foregoing language refers to an insurance policy form, "TV GCO," and the circumstances under which policies can be issued, "Simplified Issue."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

(2) policy illustrations provided to Hardwick were misleading, id. ¶¶ 10-11;

(3) the MDR increase was a breach of the Policies because it was predicated upon a death rate that was not likely to continue, id. ¶ 13, and because it impermissibly recouped past losses, id. ¶ 18; and

(4) Mahoney "did not conduct any actuarial analysis to properly project mortality," id. ¶ 20.

Transamerica argues that none of the foregoing four opinions was timely disclosed and that they should be excluded from trial pursuant to Federal Rule of Civil Procedure 37(c)(1). Transamerica's first motion in limine is denied for two independent reasons.

First, Transamerica has not demonstrated that these opinions could have been disclosed earlier. At the time the parties exchanged expert reports, Transamerica had only produced a fraction of what it ultimately provided in discovery. As explained in the Granieri Report:

> because a substantial volume of information required to form my opinions is not available, the work done to date represents preliminary thoughts and analyses. I am informed that the missing information is not available and was requested from Transamerica on May 5, 2016. Based on these analyses, my opinion is that the April 2013 MD Increase was not consistent with the Policy terms.

Granieri Report at 4. At the time plaintiff provided its initial and rebuttal expert reports, Transamerica had produced fewer than 36,995 documents out of the 719,173 it would eventually be required to produce in this case. None of those initial documents derived from Transamerica's employees' custodian files. See Herman Decl. ¶¶ 3-5.

The discovery cutoff was initially set on December 16, 2016. On December 12, 2016, Magistrate Judge Wistrich granted plaintiff's motion to compel and ordered Transamerica to produce additional documents. After the initial discovery cut-off expired, Magistrate Judge Wistrich found, a second time, that Transamerica had failed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

produce requisite documents.  As of February 17, 2017, Magistrate Judge Wistrich concluded "for a variety of reasons – principally including [Transamerica]'s delay, obstruction, and mistakes – defendant's production is still not complete," and ordered monetary sanctions as well as various additional discovery requirements.  Dkt. 181. Thus, on March 16, 2017, the Court reopened discovery for 90 days. Dkt. 192.  The bulk of document production in this case occurred on March 17, 2017, several hundred thousand pages of production.

On July 24, 2017, after the instant motion was filed, DCD served Transamerica with new supplemental expert reports by both Granieri and Cauthen which contain the opinions challenged here.  Opp'n to No 1 Exs. 3-4.  In his July 24, 2017 report, Granieri states:

> as of the time I submitted the Granieri [] Report, DCD had not yet deposed any of the individuals who are most knowledgeable about the PIC Policies as they relate to this case.  I have since learned that I was correct in this belief. Indeed, almost all of the documents Transamerica produced in discovery in this case were not made available to DCD until months after I submitted the Granieri Report.  This includes categories of documents that are important to my analysis including TransValue pricing assumptions for smokers, more complete death claims for the PIC Policies, reinsurance treaties, underwriting guidelines, monthly deduction rates, internal and external Transamerica emails; Transamerica memoranda, and class composition information.  Moreover, the depositions of the fact witness whose testimony significantly influenced my opinions did not occur until late May through mid-July, 2017.  Now that I have been able to review and analyze the recent fact discovery in this case, I submit this Supplemental Expert Report of Vincent J. Granieri . . . .

Opp'n to No. 1 Ex. 3 at 3.  Similarly, Cauthen's July 24, 2017 report states:

> [t]his supplemental report is necessary because the vast majority of probative information in this case was unavailable to me at the time my expert report was exchanged on October 7, 2016.  Subsequent to issuing my report, nearly seven hundred thousand documents were produced by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

Transamerica, and all of the fact depositions were taken by the parties, with the most probative depositions having been taken between May and mid-July, 2017. For example, I received signed illustrations, reinsurance treaties, underwriting guidelines, and organizational charts after filing my report on October 7, 2016.

[2]Id. Ex. 4 at 4.

"Rule 26(e)'s supplementation requirement is not intended . . . to permit parties to add new opinions to an expert report based on evidence that was available at the time the initial expert report was due." United States ex rel. Brown v. Celgene Corp., No. 10-cv-03165-GHK, 2016 WL 6562065, at *4 (C.D. Cal. Aug. 23, 2016). However, that does not preclude a party from supplementing its expert reports if its opponent delays disclosure of the underlying information. Rule 26(e) contemplates new information arising after the initial reports are exchanged. With relevant depositions ongoing, that appears to have been what occurred here.

Second, even if some portion of the challenged opinions might have been reached sooner based upon the production timeline in this case, any failure to promptly disclose an opinion here was harmless and would not warrant sanctions under Rule 37. Insofar as defendant claims to face "gotcha litigation," Def. Motion 1 at 5, it had notice of Granieri's and Cauthen's opinions as of June 17, 2017, and could commence preparing any necessary rebuttal. Defendant arranged to take both Cauthen and Granieri's depositions on August 8 and August 9, 2017, respectively – thus, defendant has aptly taken advantage of the time remaining before trial. Trial in this matter is not scheduled to

---

[2] For its part, Transamerica's motion rests primarily upon the expiration of the initial report dates. With regard to the reopening of discovery, Transamerica claims that "[n]one of the areas of additional discovery listed in the March 16 Order has any conceivable connection to the new opinions . . . ." Def. Motion 1 n. 1. However, the foregoing conclusory assertion does not provide an adequate basis for excluding these expert opinions. Based upon the supplemental reports now before the Court, each expert appears to have based their supplemental opinions upon discovery provided as late as July 2017. Thus, the Court cannot conclude that the supplements were untimely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|----------|--------------------------|------|-----------------|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

commence until September 5, 2017.  In light of the foregoing, any impermissible delay in plaintiff's Rule 26(e) supplements appears to have been harmless.[3]

Transamerica's first motion in limine is **DENIED**.

**B.      Transamerica's Second and Third Motions in Limine to Exclude
Testimony by Cauthen and Granieri**

Transamerica brings additional motions in limine to preclude Cauthen and Granieri from offering certain opinions or testimony during trial.  Transamerica's second motion in limine is directed at Cauthen's opinions.  Transamerica's third motion in limine is directed at Granieri's opinions.  Both motions are predicated upon Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702.

Federal Rule of Evidence 702 provides:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

---

[3] Even assuming that the disclosures were *both* untimely *and* harmful, the proper remedy would not be exclusion of the opinions.  Rule 37 sanctions for dilatory conduct are committed to the Court's discretion.  Bollow v. Fed. Reserve Bank of San Francisco, 650 F.2d 1093, 1102 (9th Cir. 1981).  Rule 37 expressly contemplates sanctions other than exclusion of evidence, where appropriate – such as informing the jury of a party's failure to timely disclose evidence.

As a practical matter, because Granieri's and Cauthen's supplemental reports were provided on the last day for pretrial disclosures, July 24, 2017, Transamerica will be permitted to offer expert testimony by its previously noticed experts to rebut Granieri's and Cauthen's supplemental opinions even if the precise scope of that rebuttal testimony was not disclosed prior to July 24, 2017.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

Fed. R. Evid. 702. Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999). The district court must "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93). When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004).

With the foregoing principles in mind, the Court proceeds to evaluate the expert testimony challenged by Transamerica here.

### 1.     Cauthen's Opinions

Aside from Cauthen's opinion regarding the meaning of the term "mortality" in the Policies, which may be relevant to the breach of contract claim and is addressed above, it is unclear why any of Cauthen's other opinions remain relevant to this case. The original Cauthen Report lists four opinions:

(1)     "Transamerica launched a number of insurance programs that were, in my opinion, unlikely to achieve the goals represented by Transamerica as achievable in its sales of the products,"  Cauthen Report § III.A,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

(2)     "In my opinion, Transamerica failed to provide notice or justification for the increase in required premium payments,"[4] id. § III.B,

(3)     "In my opinion, the Corporate Insurance Product was ill-suited to meet the needs of the low income African American families residing in Los Angeles," id. § III.C,

(4)     "Transamerica should have known that based on its representations, PIC expected it to be a long-term sustainable program based on its initial pricing," id. § III.D.

The Supplemental Cauthen Report, Opp'n No 1 Ex. 4, lists additional opinions, which appear to be variations upon Cauthen's original opinions:

(1)     "In my opinion, the TransValue Product was so knowingly ill-suited to meet the needs of PIC, Reverend Hardwick and the Insureds that Transamerica had little reason to believe it would perform as represented," § II.A;

(2)     "In my opinion, Transamerica should have informed Reverend Hardwick that the PIC Program was not likely to be viable in the long run without a Cost of Insurance Increase," § II.B.

In opposition to the instant motion, DCD avers:

Cauthen applies well-accepted actuarial principles to opine that: (1) Defendant launched insurance programs unlikely to achieve the goals it represented as achievable; (2) Defendant's use of a Corporate Owned Life Insurance product ("COLI") was ill-suited to meet the needs of the PIC policyholders; and, (3) Defendant should have known that its representations led PIC to expect the program to be sustainable over the long term.

---

[4] In his July 24, 2017 supplemental report, Opp'n No 1 Ex. 4, Cauthen expressly retracts this opinion in a section entitled "Correction to the October 7, 2016 Cauthen Report." Accordingly, the Court does not address it here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|----------|---------------------------|------|-----------------|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

Opp'n No 2 at 2.

        DCD's argument is inapposite.  The claims remaining in this case are predicated upon the MDR increase – not whether issuance of the policies was appropriate or whether Transamerica properly explained the risk of an MDR increase to the insureds.  Whereas the opinions listed above and defended by DCD *might* have been relevant to any claim for negligent misrepresentation or fraudulent marketing – no such claim is proceeding to trial.

        With respect to Cauthen's opinion about the meaning of the term "mortality" in the Policies, that opinion appears relevant to DCD's claim for breach of contract. Transamerica does not expressly challenge it under <u>Daubert</u> and insofar as it is predicated upon insurance industry custom and Cauthen's experience in the industry, the Court will not exclude it under <u>Daubert</u>.  <u>See</u> <u>Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.</u>, 738 F.3d 960, 969–70 (9th Cir. 2013) ("The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").  Transamerica has filed a separate motion in limine, no. 5, directed specifically at Cauthen's definition of the term "mortality," which the Court will address below.

        Transamerica's second motion in limine to exclude Cauthen's opinions is **GRANTED in part** and **DENIED in part**.  Transamerica's second motion in limine does not present a basis for excluding Cauthen's opinion regarding industry custom and in relation to the term "mortality," or other testimony relevant to said opinion.  In that narrow respect Transamerica's second motion in limine is **DENIED**.  With respect to Cauthen's other noticed opinions, the second motion in limine is **GRANTED**.

        **2.     Granieri's Opinions**

        As an initial matter, for the reasons discussed in relation to Cauthen's opinions, Granieri will not be permitted to offer opinions regarding whether Transamerica made misrepresentations to the insureds before the policies issued.  <u>See e.g.</u> Granieri Report at 6 ("In my opinion, those within Transamerica should have known that the marketing of this program to Plaintiff's was misleading."); <u>id.</u> at 7 ("Since Transamerica knew or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

should have known that the mortality levels illustrated to PIC had little or no chance of being met in reality, but decided to nonetheless illustrate it as such, it appears likely one would conclude they should bear the consequences of the Plaintiff's having been misled."). Those opinions are not relevant to DCD's remaining claims.

Transamerica further challenges elements of Granieri's report as inadequately supported by evidence or based upon speculation. In general, Transamerica challenges Granieri's initial opinions as insufficiently supported because he "admit[ted] he had not even seen the [Transamerica] mortality study that formed the basis for the MDR increase." Def. Motion 3 at 3. The foregoing problem, to the extent it exists, appears to have resulted from the slow pace of discovery in this case and to have been remedied in Granieri's Supplemental Report, Opp'n No. 1 Ex. 3. In his July 24, 2017 report, Granieri goes into greater detail explaining the basis for his opinions and his review of Mahoney's work calculating a basis for Transamerica's MDR increase. Accordingly, Granieri's failure to review pertinent documents before offering an opinion does not provide a basis for excluding his opinions under <u>Daubert</u> – he has reviewed additional documents now and supplemented his initial opinions based upon discovery provided after his initial reports.

Transamerica also contends that specific statements in Granieri's Report would, if repeated at trial, impermissibly invade the province of the jury. For example, Granieri states in his report, "I conclude that Transamerica's April 2013 MD Increase was not consistent with the Policy terms." Granieri Report at 5. Although expert testimony concerning an ultimate issue is not per se improper, <u>see, e.g.</u>, <u>Shad v. Dean Wittier Reynolds, Inc.</u>, 799 F.2d 525, 529 (9th Cir.1986); Fed.R.Evid. 704(a), "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law," <u>Elsayed Mukhtar v. California State University, Hayward</u>, 299 F.3d 1053, 1065 n. 10 (9th Cir.2002) (emphasis in original). <u>See also</u> <u>United States v. Duncan</u>, 52 F.3d 97, 101 (2d Cir.1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (emphasis in original)). The Advisory Committee Note to Federal Rule of Evidence 704 illustrates this distinction well:

[Rule 701 and 702] also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Thus, Granieri will not be permitted to testify, for example, "Transamerica breached the Policies." However, given the manner in which impermissible statements are intermingled with admissible opinions in Granieri's reports, the Court reserves ruling on whether specific statements risk invading the province of the jury.

Defendant's third motion in limine is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** with respect to Granieri's opinions about Transamerica misleading DCD because those opinions are not relevant to the claims remaining in this action. The motion is **DENIED** in all other respects.

### C.   Transamerica's Motion to Exclude Evidence or Argument Implying Discrimination on the Basis of Race

Transamerica moves in limine for an order precluding evidence or argument regarding racial animus during trial. Transamerica claims to have moved for summary judgment regarding plaintiff's "racial animus claim," Def. Motion 4 at 1, and that DCD "does not have a race-based claim," id. at 2; however, as discussed in the Court's order on the motion for summary judgment, there has never been a "racial animus" or "discrimination" claim in this case. DCD alleges that the MDR increase was not permitted by the Policies and therefore breached the Policies.

Transamerica's fourth motion in limine does not discuss any evidence that it contends should be excluded from trial. Instead, Transamerica contends that there is no evidence of discrimination. DCD responds to the instant motion by arguing, inter alia, that it does not contend that the MDR increase "resulted from racial animus, but rather from an impermissible consideration of race-based mortality and census data . . . ." Opp'n No. 4 at 3. In light of the foregoing, there does not appear to be any evidentiary dispute presented by Transamerica's fourth motion in limine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

At this time, it is not entirely clear how plaintiff intends to characterize the evidence, what the evidence will be, or whether any hypothetical characterizations would impermissibly prejudice Transamerica. However, the Court cannot conclude that evidence of racial animus or racial discrimination would be completely irrelevant to the breach of contract claim. To the extent DCD intends to present evidence that Transamerica effectively engaged in redlining by basing the MDR increase on the race of the insured rather than any of the permissible factors under the Policies, such evidence would be relevant and likely admissible. Insofar as Transamerica is requesting a pretrial order preventing plaintiff from characterizing Transamerica's actions as discriminatory, the Court reserves ruling. Transamerica's fourth motion in limine is accordingly **DENIED without prejudice**, to be renewed at trial.

### D. Transamerica's Motion to Exclude Cauthen's Opinion Regarding the Meaning of the Term "Mortality"

Transamerica moves for an order precluding Cauthen from offering his opinion that "mortality," as used in the Policies' list of cost factors, means "the forward-looking mortality assumption for an actuarially-defined class of universal life insurance policies." Transamerica contends that "mortality" is not an ambiguous term and that its plain and ordinary meaning should govern. Transamerica contends that "mortality" is "how much [Transamerica] expects to pay in future death benefits . . . on individuals whom Transamerica expects will be insured in the future." Def. Motion 5 at 2. Defendant's argument is unavailing.

The interpretation of insurance policies adheres to the "ordinary rules of contractual interpretation." Bank of the West v. Super. Ct., 2 Cal. 4th 1254, 1259 (1992). In California, contractual interpretation must "give effect to the mutual intention of the parties," "inferred, if possible, from the written provisions of the contract." Cal. Civ. Code §1636; AIU Ins. Co. v. Super. Ct., 51 Cal.3d 807, 822 (1990) (citing Cal. Civ. Code §1639). A contract's language "governs its interpretation, if the language is clear and explicit." Cal. Civ. Code §1638. The language must "be understood in [its] ordinary and popular sense … unless a special meaning is given to them by usage, in which case the latter must be followed." Cal. Civ. Code §1644. However, "[a] policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." MacKinnon v. Truck Ins. Exchange, 31 Cal. 4th 635, 648 (2003). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
| --- | --- | --- | --- |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

policy "must be interpreted as a whole . . . in the circumstances of the case, and cannot be found to be ambiguous in the abstract."  Waller v. Truck Ins. Exchange, Inc., 900 P.2d 619, 627(1995).

Notwithstanding the foregoing principles, California courts routinely admit extrinsic evidence to aid in contract interpretation so long as it does not add to, detract from, or vary the terms of a written contract.  As relevant here:

> [e]vidence of custom or standard practice is admissible to interpret the terms of a contract and to imply terms when no contrary intent is apparent from the other terms of the contract. [Citation].  Generally, when there is a custom in a certain industry, those engaged in that industry are deemed to have contracted in reference to that practice unless the contrary appears. [Citation].  The prevailing industry custom binds those engaged in the business even though there is no specific proof that the particular party to the litigation knew of the custom.  [Citation]. The industry practice becomes a part of the contract, and the evidence of such custom is admissible to supply a missing term or to aid in interpretation if it does not alter or vary the terms of the contract. [Citation].

Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc., 252 Cal. Rptr. 573, 579 (Ct. App. 1988).

Cauthen is of the opinion that it is customary in the insurance industry to use the term "mortality" in the context of expected mortality costs to refer to expectations among an actuarially-defined class of policies.  His opinion does not appear to be at odds with other language in the Policies.  In fact, at bottom, Cauthen's interpretation is, in most respects, consistent with the purported plain and ordinary meaning offered by Transamerica – both definitions contemplate Transamerica changing the MDR based upon death benefits it expects to pay in the future.  However, Cauthen contends that as a matter of industry custom, insurance companies refer to mortality costs to mean those death benefits it expects to pay in relation to some particular group of policies, rather than *all* in-force policies of all types or a random assortment of unrelated policies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

As relevant to this case, Transamerica contends that it used information about policies that were *no longer in force* – policies that had already paid death benefits – to inform its expectations about future death benefits owed for the Policies. Mahoney's work on the MDR increase begs an obvious question – why were some past death benefits relevant to Transamerica's death benefit expectations for the Policies, but not others? Presumably, Transamerica would respond that Mahoney used death benefit information from past policies that shared similarities with the remaining, in-force Policies. Thus the parties' dispute is, at bottom, a dispute about which past deaths are relevant to any particular policy's prospective mortality expectations. Cauthen contends that the answer is implicit in the word "mortality," as that term is used in the industry. Cauthen's opinion appears to be consistent with testimony by Transamerica's Chief Actuary as well. See dkt. 244-5 at 64:14-65:23 ("MDR increases should be based upon "the actual data for all policies that had been issued *within that policy class*," including lapsed policies, which provide "relevant experience." (emphasis added)). Accordingly, the extrinsic evidence offered by Cauthen does not appear to be at odds with the Policies' language, Transamerica's use of the term "mortality," or what occurred in relation to the Policies in this case. Thus, as evidence of industry custom, Cauthen's opinion appears to be admissible.

Insofar as Transamerica disputes the accuracy of Cauthen's opinion, Transamerica appears to challenge the credibility of plaintiff's evidence – not its admissibility. Thus, insofar as it requires weighing extrinsic evidence, the meaning of the term "mortality" is a question for the jury. See Maxim Integrated Prod., Inc. v. Analog Devices, Inc., 79 F.3d 1153 (9th Cir. 1996) (reversing grant of summary judgment where parties presented extrinsic evidence in dispute over the interpretation of the words "best efforts," in a contract); GGIS Ins. Servs., Inc. v. Superior Court, 89 Cal. Rptr. 3d 515, 527 (2008) ("The interpretation of a[n insurance] contract, including the resolution of any ambiguity, is solely a judicial function, *unless the interpretation turns on the credibility of extrinsic evidence*." (emphasis added)). Transamerica's fifth motion in limine is **DENIED**.

### E.   Transamerica's Sixth Motion in Limine to Exclude Evidence or Argument Relating to Other Insurance Policies.

Transamerica's sixth motion in limine seeks to exclude evidence relating to life insurance policies issued on the lives of congregants of Stockton Christian Ministries

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

("Stockton Policies") and policies issued to the Village Presbyterian Church ("VPC Policies"). According to Transamerica, an unidentified number of the original 1,004 Stockton Policies were "TransValue conditional guaranteed issue policies like those sold to Plaintiffs," but only five such policies remained in force when the MDR increase here occurred. Transamerica does not explain whether and how the VPC Policies may or may not have differed from DCD's, but contends that none of the VPC Policies were still in force when the MDR increase here occurred. Other than its assertion that none of the VPC Policies remained in-force, Transamerica has not offered any reason evidence of VPC Policy experience should be excluded from trial. Transamerica contends that, when it increased the MDR at issue in this case, neither the Stockton Policies nor the VPC Policies could impose *future* mortality costs because so few of the Stockton Policies, and none of the VPC Policies, were in force. Thus, Transamerica asserts that these other groups of policies were and remain irrelevant to the MDR increase at issue here and that plaintiffs should be precluded from presenting evidence or argument suggesting data derived from either group of other policies should have been considered in Transamerica's MDR increase. Transamerica contends that the evidence should be excluded as irrelevant and pursuant to Rule 403.

As far as relevance is concerned, Transamerica's sixth motion in limine is a reformulation of its argument that Mahoney's work – basing the MDR increase upon a rudimentary assessment of deaths among those insured by DCD's Policies – did not breach the Policies. However, the adequacy of Mahoney's work as justification for the MDR increase is a question for the jury. As discussed in the Court's summary judgment order, there are material issues of disputed fact about the adequacy of Mahoney's work and the intent behind his work. According to DCD, the Stockton Policies are substantially similar to the policies at issue here, and consequently Mahoney should have considered those policies in conducting his actuarial analysis because they are within scope of relevant policy experience. The mortality experience of the Stockton Policies was lower than the mortality experience on DCD's Policies. Thus, one relevant inference that can be drawn from at least some Stockton Policy evidence is that Transamerica deliberately turned a blind eye to relevant experience among other policyholders in order to contrive an MDR increase of a certain scale for the Policies.

Although the Policies require a decision to be based upon *prospective* expectations, DCD does not dispute that *past experience* is reasonably considered to estimate costs in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

the future. Implicit in Transamerica's position is that some past policy experience is relevant to the MDR increase but not all past policy experience. However, Transamerica has not provided a principled distinction between the Stockton/VPC Policies and the Policies in this case, let alone one requiring exclusion of this evidence. At this stage, the Court cannot discern what evidence about the VPC Policies, in particular, is at issue or how those policies may relate to this action. Based upon Cauthen's proposed definition of "mortality," and the testimony of Transamerica's chief actuary, discussed above, there appears to be evidence that Transamerica was required by the Policies to base its MDR increase upon the mortality experience in an undefined "class" of relevant policies. The Stockton Policies and VPC Policies appear to be relevant to the foregoing dispute about the scope of relevant policy experience. Therefore, evidence relating to mortality among Stockton Policyholders or VPC Policyholders may be relevant to plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

At trial, Transamerica will have ample opportunity to cross-examine DCD's expert witnesses regarding their assessment of Mahoney's work and whether he should have considered the Stockton Policies and VPC Policies as part of his actuarial analysis. As for Rule 403, the Court declines to exclude all evidence of these two potentially relevant groups of policies without being more thoroughly apprised of the evidence at issue and why Transamerica contends its admission would be unfairly prejudicial. Accordingly, Transamerica's sixth motion in limine is **DENIED without prejudice**.

## F. Transamerica's Seventh Motion in Limine to Exclude Evidence of Representations to Hardwick.

Transamerica's last motion in limine seeks to exclude evidence of representations Transamerica purportedly made to Hardwick during the negotiation of the policies. Specifically, Transamerica seeks to prevent Hardwick from testifying that Transamerica promised never to increase the MDR on the Policies. Transamerica contends that, because the Court has granted Transamerica summary judgment regarding DCD's negligent misrepresentation claim and all of Hardwick and PIC LLC's claims, Hardwick's claim that Transamerica promised never to increase MDRs is no longer relevant to the remaining claims and would risk unfair prejudice to Transamerica. In opposition to the instant motion, DCD argues that Transamerica's representations to Hardwick (1) are relevant to DCD's remaining UCL claim, (2) are relevant to the proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

interpretation of the Policies, and (3) provide important background information regarding how DCD came to own the Policies.

None of DCD's arguments is persuasive. As an initial matter, although the Court's summary judgment order did not expressly address whether DCD could pursue a fraud-based UCL claim at trial, the same reasons DCD cannot proceed to trial on its negligent misrepresentation claim apply with equal force to any purported fraud-based UCL claim. Specifically, there is no evidence that Transamerica made a misrepresentation to DCD or that Hardwick repeated any purported misrepresentations by Transamerica to DCD. Even if DCD proves that Transamerica told Hardwick it would never increase the MDR, there is no evidence that Hardwick repeated that representation to DCD or that DCD relied upon any misrepresentations when it invested in the Policies. Even if Transamerica's representations to Hardwick were relevant to the UCL claim, that claim will be determined by the Court and there would be no basis for presenting such evidence to the jury.

Other than DCD's conclusory assertion that any representations to Hardwick are relevant to the proper interpretation of the Policies, DCD does not explain why that would be the case. As a matter of contract interpretation, the Court has repeatedly ruled here that the Policies permit Transamerica to increase the MDR up to a guaranteed maximum, but require that any increase be based on prospective cost expectations delineated in the Policies. See dkt. 39 at 7 (rejecting plaintiffs' argument that Transamerica was "bound by a promise to 'never use higher rates'" because such a limitation "is not supported by the language of the policy."); dkt. 48 at 7 n. 2 ("the Court has already explained that the terms of the policy unambiguously grant Transamerica the discretion to adjust the MDR"). Additionally, DCD has conceded that it invested in the Policies with an understanding that the MDRs could increase in the future. See dkt. 219-1 No. 56 (undisputed that Rose told Rosenfeld that the MDR could go up); No. 61 (undisputed that no one from Transamerica told Rosenfeld the MDR would not go up). In light of the foregoing, there is no basis for admitting testimony by Hardwick which is at odds with the express language of the Policies.

Insofar as DCD contends that Transamerica's alleged representations to Hardwick are important background information to this case, that limited probative value is substantially outweighed by the risk of unfair prejudice to Transamerica. Admission of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

Hardwick's testimony would require a mini-trial about precisely what Transamerica said during a series of meetings spanning years, all of which occurred several years before DCD had any connection to the Policies. After hearing Hardwick's testimony about why he contends he was misled into working with Transamerica, the jury might unfairly infer that this trial is about fraud, that the language of the Policies should not govern DCD's breach of contract claim, or that Transamerica should be punished for conduct that has little or no relevance to the claims that will be decided by the jury. Undoubtedly, the jury should be permitted to hear *some* evidence about how these Policies came into existence, whom they insure, and how DCD became involved as an investor. That information has probative value as background to the jury's understanding who the insureds are and why DCD contends that the MDR increase was a breach of the Policies. However, any evidence suggesting that Transamerica misrepresented the nature of the Policies to Hardwick, whose claims for relief did not withstand the motion for summary judgment, risks substantial unfair prejudice to Transamerica. Such evidence is not probative background to the breach of contract claims remaining in this case. Accordingly, Transamerica's seventh motion in limine is **GRANTED**.

### G.   DCD's Motion in Limine to Exclude Evidence the a Prior Investor in the Policies was Convicted of Criminal Fraud and Money Laundering

In August 2006, the original investors in the Policies, Curtis Somoza and Robert Coberly, were evidently arrested and charged with various criminal offenses arising out of their role in a Ponzi scheme. Both individuals pleaded guilty and received substantial prison sentences. DCD moves to exclude any evidence relating to Somoza's or Coberly's criminal conduct or the criminal charges brought against them as irrelevant and unfairly prejudicial to DCD. In its opposition, Transamerica states that it "does not oppose Plaintiffs' Motion to the extent it seeks to preclude evidence of the criminal proceedings against those individuals." Def. Opp'n at 1. Accordingly, DCD's motion in limine is **GRANTED** insofar as it relates to evidence of criminal conduct by Somoza or Coberly.

In its motion, DCD makes multiple references to "other" unidentified legal proceedings against "PIC or its representatives." The Court cannot discern what "other" actions DCD contends are irrelevant here other than the criminal cases against Somoza or Coberly. To the extent DCD seeks to exclude evidence other than that discussed above,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:15-cv-03238-CAS (AJWx) | Date | August 21, 2017 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

DCD has failed to adequately identify any such evidence and the motion is **DENIED without prejudice**.

## IV.   CONCLUSION

The Court rules as follows.

Transamerica's first motion in limine is **DENIED**

Transamerica's second motion in limine is **GRANTED in part** and **DENIED in part**.  The motion is **DENIED** with respect to Cauthen's opinion regarding insurance industry custom and use of the term "mortality" and **GRANTED** in all other respects.

Transamerica's third motion in limine is **GRANTED in part** and **DENIED in part**.  The motion is **GRANTED** with respect to Granieri's opinions about misleading marketing materials or misrepresentations by Transamerica and **DENIED** in all other respects.

Transamerica's fourth motion in limine is **DENIED**.

Transamerica's fifth motion in limine is **DENIED**.

Transamerica's sixth motion in limine is **DENIED**.

Transamerica's seventh motion in limine is **GRANTED**.

DCD's motion in limine is **GRANTED in part** and **DENIED in part**.  The motion is **GRANTED** with respect to evidence of criminal conduct by Somoza or Coberly and **DENIED** in all other respects.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |