**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: | |
| Michael Collins | Mark Zebrowski | |
| Maxwell Herman | Hutson Smelley | |

**Proceedings:** PLAINTIFF'S MOTION ATTORNEYS' FEES AND COSTS (Dkt. 474, filed June 25, 2018)

PLAINTIFF'S MOTION FOR SUPPLEMENTAL DAMAGES (Dkt. 487, filed July 9, 2018)

## I. INTRODUCTION

On June 25, 2018, plaintiff DCD Partners, LLC ("DCD"), filed the instant motion for attorneys' fees and costs pursuant to California's "private attorney general" fee-shifting statute, Cal. Civ. Proc. Code § 1021.5 ("Section 1021.5"). Dkt. 474 ("Fees Mot.").[1] On July 16, 2018, Transamerica filed its opposition. Dkt. 489 ("Fees Opp'n"). DCD filed a reply on July 23, 2018. Dkt. 493 ("Fees Reply"). On July 3, 2018, the parties filed a stipulation asking the Court to bifurcate the issues of entitlement to an award of attorneys' fees and costs and the amount of the award, which the Court approved. Dkts. 482, 488.

On July 9, 2018, DCD also filed a motion for an award of supplemental damages based on Transamerica's conduct that occurred after the jury's verdict. Dkt. 487 ("Suppl. Damages Mot."). Transamerica filed its opposition on July 16, 2018. Dkt. 491 ("Suppl. Damages Opp'n"). DCD filed a reply on July 23, 2018. Dkt. 492.

---

[1] The Court assumes that "costs" as used in this motion refers to any costs that may be permitted solely under Section 1021.5. Should DCD seek to recover its costs as otherwise permitted under Federal Rule of Civil Procedure 54(d)(1), it must comply with the procedures set forth in Rule 54 and the Local Rules.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. ATTORNEYS' FEES AND COSTS

Under the "American Rule", each party to a lawsuit ordinarily bears its own attorneys' fees unless there is express statutory authorization to award them. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). In a diversity action federal courts apply the substantive law of the forum state, which in this instance is California. Kabatoff v. Safeco Ins. Co. of Am., 627 F.2d 207, 209 (9th Cir. 1980). In general, California law only allows a prevailing party to recover attorneys' fees when a statute or an agreement of the parties provides for fee-shifting. Kirby v. Immoos Fire Prot., Inc., 53 Cal. 4th 1244, 1248 (2012). California has provided an exception to the American Rule in Section 1021.5. This statute is intended "to encourage suits effectuating a strong public policy by awarding substantial attorneys' fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." Woodland Hills Residents Ass'n v. City Council, 23 Cal. 3d 917, 933 (1979) (internal quotation marks and brackets omitted). Section 1021.5 permits a court to award attorneys' fees to:

> (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate, and (6) in the interests of justice the fees should not be paid out of the recovery.

Robinson v. City of Chowchilla, 202 Cal. App. 4th 382, 390 (2011) (footnote omitted). The moving party bears the burden of establishing each element for a trial court to have authority to award fees under the statute. Keep Our Mountains Quiet v. Cty. of Santa Clara, 236 Cal. App. 4th 714 (2015); County of Colusa v. California Wildlife Conservation Bd., 145 Cal. App. 4th 637, 638 (2006).

For the reasons discussed below DCD's motion must be denied because it has failed to show that elements 2, 3, 5, and 6 have been satisfied. The Court will address each element in turn below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

### A. Enforcement of an Important Right Affecting the Public Interest

DCD has failed to show why this private litigation brought to enforce its contractual rights under contracts of insurance resulted in the enforcement of an important right affecting the public interest. This breach of contract case was brought because of the pecuniary and economic benefits for DCD, not to enforce fundamental public policies embodied in constitutional or other law. The purpose of the private attorney general doctrine enunciated in Serrano v. Priest, 20 Cal.3d 25 (1977), and as codified in Section 1021.5, "is to encourage suits enforcing important public policies by providing substantial attorneys' fees to successful litigants in such cases." Robinson, 202 Cal. App. 4th at 390. There has been no showing by DCD that this run of the mill insurance contract dispute wholly between private litigants was brought to effectuate a fundamental or important public policy.

### B.     Significant Benefit Conferred on a Large Class of Persons

DCD argues that this litigation conferred significant economic benefits on the policyholders in this case as well as the Personal Involvement Center, LLC, ("PIC"), and conferred significant non-monetary benefits on plaintiffs who have other outstanding lawsuits against Transamerica that involve similar policy provisions. Fees Mot. at 6–10. The Court rejects both arguments.

DCD has not shown that the insureds or PIC will receive any benefit as a result of this litigation. This litigation only concerned the validity of Transamerica's 2013 increase in the policies' premiums, or Monthly Deduction Rate ("MDR"). Dkt. 368 ("Stip. Facts") ¶ 1(a)–(b) (collectively, the "Policies"). DCD pays the entire MDR, and when an insured dies the insured's beneficiaries receive $15,000, PIC receives $35,000, and DCD receives $225,000. As DCD acknowledges in its motion, it is under no legal obligation to pay the MDR, the only consequence if it does not is that the policy will lapse and no one will receive anything. Because DCD pays the entire MDR, the only way a change in the MDR could affect the benefits that the insureds' beneficiaries or PIC receive is if the 2013 MDR increase resulted in an independent decision by DCD to abandon its investment and allow the Policies to lapse. However, DCD never asserts that if the MDR increase had remained in effect it would have allowed the Policies to lapse. DCD, in fact, goes to some effort to specifically hedge against making that assertion. Fees Mot. at 16 ("*In hindsight* [cutting its losses in 2015] would have been economically prudent"), id. ("DCD's financial interests . . . *weighed towards* allowing the policies to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
|---|---|---|---|
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

lapse"), <u>id.</u> at 16 n. 90 (quoting Rosenfeld's testimony trial at that "if this trend continues, we will lose significant monies and the program *may not be* sustainable.") (emphasis added to each). Because there is no evidence that shows that DCD would have allowed the Policies to lapse regardless of the outcome of this litigation, there is no evidence that shows that this litigation conferred any economic benefit on the insureds or PIC. In fact, because this litigation only concerned MDRs which are paid entirely by DCD, the only party that received any direct monetary benefit from this litigation was DCD itself.

    DCD has also not shown that plaintiffs who have brought other lawsuits against Transamerica will receive any benefit from this litigation. DCD identifies two class action cases pending in this Court against Transamerica which concern rate increases in policies with similar language to the Policies. Fees Mot. at 9–10 (citing <u>Feller, et al. v. Transamerica Life Insurance Company, et al.</u>, 2:16-cv-01378-CAS-GJS, and <u>Thompson, et al. v. Transamerica Life Insurance Company</u>, 2:18-cv-05422-CAS-GJS. DCD argues that these putative class members benefited from this litigation because the Court interpreted language shared in all three cases to require greater safeguards than Transamerica had conceded at the start of this litigation. <u>Id.</u> However, any benefit provided by this case to other plaintiffs is highly speculative and unsupported by the record. There is no evidentiary basis for DCD's claim that the result in this case will save those plaintiffs "millions of dollars," as DCD asserts. Fees Mot. at 10. Most importantly, much of this litigation concerned the idiosyncratic context of the Policies and statements made about the 2013 MDR increase. These statements and the theory that DCD actually prevailed on are therefore unlikely to be especially relevant to <u>Feller</u> and <u>Thompson</u>, which concern different policies with different MDR increases in different years.

    For the foregoing reasons the record reflects that DCD was the only party to benefit from this litigation. While this alone is sufficient grounds to deny the motion, the Court will address the remaining elements because each element must be established in order to award fees under Section 1021.5.

    **C.**     **The Financial Burden of Private Enforcement**

    The burden prong "focuses on the financial burdens and incentives involved in bringing the lawsuit." <u>Press v. Lucky Stores, Inc.</u> 34 Cal.3d 311, 321 (1983). Attorneys' fees are appropriate when the cost of the litigation is objectively out of proportion to the litigant's personal financial stake, regardless of the party's subjective reasons for bringing the lawsuit. <u>Conservatorship of Whitley</u>, 50 Cal. 4th 1206, 1215, 1220–21 (2010). In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

analyzing this burden the court must compare the "value of the case at the time the vital litigation decisions were being made" to the actual costs of the litigation. Id. at 1215 (quoting Los Angeles Police Protective League v. City of Los Angeles ("LAPPL"), 188 Cal. App.3d 1, 10 (1986)). An award of attorneys' fees "will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs." LAPPL, 188 Cal. App.3d at 10. The value of the monetary award must include all financial benefits the litigant could receive regardless of whether it would be received as damages or equitable relief. See Children & Families Com. of Fresno Cty. v. Brown, 228 Cal. App. 4th 45, 60 (2014) (including the value of equitable relief because it provided the litigant with a pecuniary benefit even though the litigant received no money damages). The value of the case is determined by "discounting the monetary value of the benefits that the successful litigant reasonably expected at the time the vital litigation decisions were made by the probability of success at that time." Collins v. City of Los Angeles, 205 Cal. App. 4th 140, 155 (2012). The Court must therefore examine three variables: (1) the value of the expected monetary benefits of successful litigation, (2) the probability of success, and (3) the actual litigation costs. In this case the Court only needs to determine the value of DCD's expected monetary benefits because, even accepting DCD's figures for the remaining variables, DCD still had a substantial financial incentive to litigate this case.

The parties disagree on how to estimate the pecuniary value of the outcome of the case. DCD argues that it "starts" (and stops) with the gains it actually attained in this litigation, which was the $5,608,495.57 it was awarded in damages. Fees. Mot. at 13. Transamerica agrees that this figure is part of DCD's personal stake in the litigation, but argues that DCD must also include a portion of the $632,500,000 in benefits that DCD will receive, which would be $497,700,000 ($225,000 per insured, multiplied by the 2,212 Policies still in force). Fees Opp'n at 15. Transamerica argues that DCD is hypocritical in ignoring the amount of the economic benefits it will prospectively receive because DCD also argued that this litigation substantially benefited a large class of persons because it kept in place $632,500,000 in death benefits. Fees Opp'n at 14–15. If DCD's position that the potential benefit flowing from keeping the Policies in force should be disregarded, then it would appear that DCD's argument that it conferred a benefit on a large class of persons would fail. Alternatively, DCD disputes Transamerica's number because it ignores the years of premiums and administrative fees DCD will have to pay. Fees Reply at 13–14. DCD is correct that the $497,700,000 figure represents DCD's total revenue on the Policies, not its net profit, but DCD does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

not provide an alternative figure. It was DCD's burden to show the value of its personal stake in the successful in litigation, and even though some uncertainty may be involved, that does not justify DCD entirely ignoring tens of millions of dollars of profits.

However, there is some evidence in the trial record that does provide a reasonable estimate of DCD's prospective benefits of the litigation. In 2011, prior to purchasing the Policies, Rosenfeld hired a consultant, Scott Rose, to evaluate their financial viability. Trial Tr. Sept. 6, 2017, PM, at 87. Rose concluded in 2011 that the Policies had a net present value to DCD of $41,792,589. Id. at 29–30. This figure is useful because it was created well before litigation when DCD had a strong incentive to impartially evaluate the Policies, and it ignores sunk costs like DCD's $12 million to purchase the Policies, which were not recoverable regardless of its decision to file a lawsuit. However, there are limitations to using Rose's valuation in this motion. First, it was an estimate of the value of the Policies stated in 2011 dollars, not 2015 dollars. Second, it does not account for changes in the value of the investment in the intervening four years if the insureds had a different life expectancy than DCD estimated. Given DCD's failure to meet its burden to show the value of its prospective stake in the litigation, and its reliance on this figure in 2011, the Court will adopt Rose's 2011 figure of $41,792,589 million as DCD's prospective benefits obtained in this litigation.

To summarize: at the time DCD decided to file this case in 2015 it reasonably expected that, if successful, it would receive $5,608,495.57 for the improperly paid premiums through the date of the jury's verdict, and $41,792,589 in post-judgment net profit on the Policies.[2] This means that DCD had a total financial incentive of $47,401,084.57 to litigate this case for its own pecuniary benefit.

Under Section 1021.5, a litigant must show the "financial burden of private enforcement" element is satisfied, which requires showing that (1) the reasonable value of benefits to the litigant if successful, discounted by (2) the probability of success, does not substantially outweigh (3) the actual litigation costs. DCD argues that it had only a 25% chance of prevailing, and that its actual litigation costs were $8,708,214.76.[3] Fees

---

[2] DCD's stake in this litigation also includes its post-verdict, pre-judgment supplemental damages, as explained below. This figure it not included in this analysis only because it has not yet been determined.

[3] DCD's actual litigation costs are almost certainly unreasonably high because of the manner in which it prosecuted this case, and it would be manifestly unfair if DCD could

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

Mot. at 17. Even accepting these numbers and discounting DCD's benefits of $47,401,084.57 by its claimed 25% chance of success, the value of the case to DCD when it decided to file was $11,850,271.14, compared to $8,708,214.76 in actual costs. If DCD had a 50% possibility of success then it would have $23,700,542.28 in potential benefits. The economics of the case show that, far from being a burden, DCD had a substantial financial incentive to litigate this case and is thus ineligible for an award of attorneys' fees under Section 1021.5. See California Licensed Foresters Assn. v. State Bd. of Forestry, 30 Cal. App. 4th 562, 570 (1994) ("Section 1021.5 is intended as a 'bounty' for pursuing public interest litigation, not a reward for litigants motivated by their own interests who coincidentally serve the public."); see also Whitley, 50 Cal. 4th at 1211 ("[A] litigant who has a financial interest in the litigation may be disqualified from obtaining [private attorney general] fees when expected or realized financial gains offset litigation costs.").

### D. Interests of Justice

The interest of justice element of Section 1021.5 asks whether "such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5. This element is only evaluated when there was a monetary recovery. Baggett v. Gates, 32 Cal.3d 128, 142 n. 17 (1982). The interest of justice inquiry requires a value judgment as to the desirability of offering the bounty of an award of attorneys' fees to encourage similar litigation, and in some circumstances this analysis may encompass parts of the "financial burden of private enforcement" inquiry. Collins, 205 Cal. App. 4th at 157.

The Court concludes that DCD should be required to pay its attorneys' fees out of its recovery. DCD is a sophisticated investment entity and approached the Policies as an investment. As explained above, the amount it recovered on its breach of contract claim represents only a small portion of the overall value DCD will receive from the Policies and this litigation, and any benefit to PIC and the insureds is largely incidental. DCD argues that it would be unfair and contrary to the interests of justice to require it to pay its attorneys' fees out of its recovery because "that recovery is merely the recoupment of

---

use its own inefficiencies to make it easier to show an entitlement to attorneys' fees. However, this concern is not present in this case because even using DCD's own statement of its actual litigation costs, DCD still had substantial incentive to litigate this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

monies wrongfully taken by Transamerica." Fees. Mot. at 22. In essence DCD argues that if its attorneys' fees are not shifted onto Transamerica then it cannot be made whole. Fees Reply at 14–15. However, that is the American Rule and is present in every breach of contract case. This alone is not enough to show that DCD's lawsuit should be subsidized with an award of attorneys' fees. This case was a multi-million dollar commercial dispute between sophisticated commercial entities where one party tried to alter the terms of an investment and was found to have done so improperly under the provisions of the contract. The interests of justice therefore do not require that DCD's attorneys' fees be paid out separately from its recovery.

Because DCD has failed to carry its burden on the foregoing essential elements of Section 1021.5, the Court **DENIES** its motion for attorneys' fees.

### III. SUPPLEMENTAL DAMAGES

The jury rendered a verdict in DCD's favor on its claims for breach of contract and breach of the covenant of good faith and fair dealing on September 13, 2017 and awarded it $5,608,495.57.[4] Dkt. 386. This was the amount the parties had stipulated at trial was "[t]he principal amount of additional premiums DCD paid as a result of the increase from the time of the increase through 7/31/17." Stip. Facts ¶ 2(g). DCD now argues, and Transamerica does not dispute, that, despite the jury's verdict, Transamerica continued to require DCD to pay excess premiums based on the 2013 MDR increase that the jury found was a violation of the Policies. Suppl. Damages Mot. at 1. DCD asks the Court to award it supplemental damages for the amount of additional premiums that it has had to pay after July 31, 2017, through the eventual entry of judgment. Id. at 4.

DCD argues that the Court should exercise its inherent power to award supplemental damages by applying a summary judgment standard to "roll-forward" the jury's verdict to the date of judgment because there are no disputed factual issues regarding DCD's entitlement to the full amount of the increased premiums that it has been forced to pay, and the amount can be determined by simple arithmetic. Id. at 3, 5–6. DCD argues that post-verdict, pre-judgment supplemental damages are routinely awarded in patent cases, and that the alternative would be for it to file a wasteful new complaint and motion for summary judgment against which Transamerica would be collaterally estopped from contesting liability. Id. at 6–7. Transamerica argues that because these

---

[4] The Court addresses both of these claims as a single claim for breach of contract for convenience.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

damages were not presented to the jury it has a Seventh Amendment right to a jury trial on these damages and collateral estoppel does not apply.

The Policies allowed Transamerica to raise premiums if it could show that it was done "subject to our expectation as to future cost factors." Ex. 501 ("Specimen Policy") at 13–14. The jury found that Transamerica breached the Policies and awarded DCD the entire amount of the additional premiums paid as a result of the MDR increase through July 31, 2017. Completed Jury Verdict Form, dkt. 386. This means that the jury necessarily found that the 2013 MDR increase itself was a breach of the Policies, that Transamerica imposing the improper MDR increase caused DCD damages, and that those damages were the entire amount excess premiums paid as a result of the MDR increase.

Transamerica argues that it is entitled to a jury trial on post-verdict, pre-judgment supplemental damages, but the only elements of DCD's request that Transamerica disputes are causation and damages, both of which were already decided by the jury. Transamerica challenges the damages because it only stipulated to the dollar amount of increased premiums paid by DCD, and it never stipulated that this amount constituted damages. Suppl. Damages Opp'n at 5. But Transamerica's stipulation is irrelevant at this stage because the jury determined that DCD's damages were the entire amount paid due to the 2013 MDR increase. Transamerica also repeats its causation arguments from its motion for judgment as a matter of law and argues that DCD never proved that some portion of the MDR increase could not have been appropriately justified based on future cost factors. Id. at 4–5. However, the jury necessarily rejected this argument by finding that DCD's damages were entirely caused by the 2013 MDR increase, and the Court has since concluded that this decision was supported by the record.

Transamerica also argues that even if it had the burden to show that DCD's damages were less than the increased premium paid as a result of the MDR increase, damages after July 31, 2017 are still disputed and must be decided by jury. Suppl. Damages Opp'n at 5 n. 3. This, however, still misconstrues the jury's verdict and the relative burdens on the parties. DCD's theory of the case was that the claimed basis for the entire MDR increase was pretextual and actually imposed because Transamerica was losing money on the Policies, and that lack of profitability was not a valid "future cost factor." The jury accepted this argument when it awarded DCD the entire amount of excess premiums as damages because it necessarily had to find that none of the 2013 MDR increase was based on Transamerica's expectation of future cost factors. Transamerica cannot now say that it is entitled to a jury trial on the grounds that some of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:15-cv-03238-CAS (GJSx) | Date | August 6, 2018 |
| Title | DCD PARTNERS, LLC ET AL. V. TRANSAMERICA LIFE INSURANCE COMPANY ET AL. | | |

the 2013 MDR increase could be justified when continued after July 2017 because a jury already found that none of the 2013 MDR increase was based in future cost factors. While the total amount of the MDR increase that DCD paid after July 31, 2017, has not been provided, it also appears to be undisputed. The 2013 MDR increase was a specific, fixed amount per insured, and it was fully paid by DCD for each insured. The only unknown variable appears to be how many insureds have passed away per month since July 31, 2017, and the Court does not expect that number to be disputed.

Whether addressed on a summary judgment standard, as an equitable remedy such as restitution, equitable accounting or a post-verdict supplemental damages award, or alternatively, as part of DCD's request for pre-judgment declaratory relief, Transamerica is not entitled to an additional jury trial on its liability for the MDR increase for which it has charged excess premiums to DCD while this case is ongoing.

The only remaining issue is to determine the actual amount of the excess premiums that DCD has paid to Transamerica as a result of the 2013 MDR increase since July 31, 2017. Subject to Transamerica's continuing objection as to DCD's entitlement to supplemental damages, the parties shall submit a form of judgment that includes DCD's supplemental damages within two weeks of receipt of this order.

## IV. CONCLUSION

Accordingly, DCD's motion for attorneys' fees (dkt. 440) is **DENIED**, and DCD's motion for supplemental damages (dkt. 487) is **GRANTED**.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | | 00 | : 24 |
| | Initials of Preparer | CMJ | |